IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SARAH L. KOHLHAAS, | ) |
| | ) |
|               **Plaintiff,** | ) |
| | ) |
| vs. | )   Civil No. 13-cv-382-CJP[1] |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|               **Defendant.** | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Sarah L. Kohlhaas seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for benefits in April, 2010, alleging disability beginning on April 10, 2010.  (Tr. 22).  After holding an evidentiary hearing, ALJ Rebecca LaRiccia denied the application in a written decision dated December 2, 2011.  (Tr. 22-33).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.  (Tr. 1).  Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issues Raised by Plaintiff**

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 13.

Plaintiff raises the following points:

1. The ALJ erred in not giving appropriate weight to the opinions of plaintiff's treating physician, Dr. Elvira Salarda.

2. The ALJ's determination of plaintiff's residual functional capacity (RFC) was erroneous because she failed to account for plaintiff's sleep apnea and headaches, and failed to consider the collective effects of all impairments.

### **Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

2

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009.**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot

3

perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  **Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).  See also Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  Thus, this Court must determine not whether Ms. Kohlhaas was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing **Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995)**).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 91 S. Ct. 1420, 1427 (1971).**  In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  **Brewer v. Chater,**

4

**103 F.3d 1384, 1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ LaRiccia followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that she was insured for DIB through December 31, 2014. She found that plaintiff had severe impairments of sleep apnea, degenerative joint disease, degenerative disc disease, headaches, and irregular heartbeat. She further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Kohlhaas had the residual functional capacity (RFC) to perform work at the light exertional level, with a number of limitations. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a farmworker. She was, however, not disabled because she was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1.   **Agency Forms**

Plaintiff was born in 1967, and was 43 years old on the alleged onset date of April 10, 2010. (Tr. 182).

In her initial Disability Report, plaintiff said she was unable to work because of a heart condition, sleep apnea and thyroid problems. She was 5'3" tall and weighed 194 pounds. She said she stopped working on April 10, 2010, because of her condition and because her employer died. (Tr. 163-164). She had worked as a farmhand on a dairy farm since 1995. (Tr. 165).

Ms. Kohlhaas submitted a Function Report in June, 2010, in which she said she got headaches when she was in the heat, and she became sleepy during activities such as driving and reading. She used a CPAP machine and woke up a lot during the night. She had no difficulties with personal care and was able to do some housework such as making easy meals, laundry, gathering eggs and sweeping. She had no difficulty in handling her personal finances. She said she could lift about 25 pounds, sit for an hour and walk for about 500 feet. (Tr. 172-179).

About four months later, after the initial denial of her claim, plaintiff submitted another report in which she stated that she lived with her disabled husband, 22 year old daughter, 3 year old granddaughter, and 2 sons, ages 20 and 18. The granddaughter was in day care. The family had chickens, goats, cats and dogs. Plaintiff's husband and son took care of the animals. Ms. Kohlhaas said she was able to do light household chores such as folding laundry and making the bed, but was unable to do heavier chores such as mopping and scrubbing. She had a "lack of focus" and had to take frequent breaks. She claimed difficulty in

activities such as lifting, walking, sitting, reaching, etc., because of "fatigue, weakness and overall aching pain throughout [her] body."  (Tr. 191-199).

### 2. Evidentiary Hearing

Ms. Kohlhaas was represented by an attorney at the evidentiary hearing on October 4, 2011.  (Tr. 41).

Plaintiff testified that she stopped working as a dairy farmhand in April, 2010, because she had heart trouble and back pain which went down her leg.  After further questioning, she testified that she stopped working because the owner of the farm died, but she said she would have stopped working even if he were still alive.  (Tr. 46-47).

Plaintiff had no health insurance, but was still able to see Dr. Salarda.  She was taking Gabapentin for back pain, but it did not help.  She was taking medicine for headaches, but she still had headache pain all day, every day.  The medicine had helped her headaches for a while, but she became "immune" to it.  At least 3 or 4 times a month she had a headache so bad that she had to lie down in a dark room for several hours.  She had not gone to the emergency room for any of these severe headaches.  (Tr. 48-50).  She also had pain in her low back which radiated into her left leg.  (Tr. 50-51).  She took medication for an irregular heartbeat and for her thyroid.  (Tr. 51-52).  She had no side effects from her medications.  (Tr. 57).  She used a CPAP machine at night, but still had sleepiness during the day.  (Tr. 53).

Ms. Kohlhaas testified that, on an average day, she did not do much.  She sat in a recliner and watched TV.  (Tr. 53).  Her children did the household chores.

She was unable to do chores because of "so much pain in the back and legs." (Tr. 54). She could walk for maybe 50 feet and stand in one place for 10 minutes. She could sit for about 30 minutes. She could lift only 20 pounds. (Tr. 55-56).

A vocational expert (VE) testified that plaintiff's past work was performed at the medium exertional level. The ALJ asked the VE to assume a person of plaintiff's age and work history who was able to do work at the light exertional level, limited to standing/walking for a total of 1 hour a day, no foot controls with the left leg, only occasional climbing and kneeling, frequent reaching above shoulder level, and no stooping, crouching or crawling. She should avoid concentrated exposure to environmental irritants and extreme temperatures, and should not work at unprotected heights or around dangerous moving machinery. (Tr. 59-60).

The VE testified that this person could not do any of plaintiff's past work, but there were other jobs in the economy which she could do. Examples of such jobs are hand packer, assembler and sorter. (Tr. 60).

### 3. Medical Treatment

Ms. Kohlhaas saw Dr. Amar Sawar for headaches in May, 2009. He noted a history of hypothyroidism and sleep apnea. An MRI of the brain was unremarkable. He prescribed Naprosyn. She returned in August, 2010, still complaining of constant right-sided headache unrelieved by Naprosyn. He prescribed Indocin. (Tr. 358-361).

In May, 2010, a cardiac work-up was done because plaintiff complained of chest "fluttering" and tightness. She had been seen for palpitations in the past. She also complained of fatigue. She said that she was no longer working because

8

her employer had died. She denied any painful muscles or joints, weakness, loss of sensation, and leg or buttock pain while walking. Dr. Chiu noted that she had palpitations secondary to premature ventricular contractions in the past, but her present complaints seemed to be different. The cardiac work-up was not remarkable, so Dr. Chiu suggested an event monitor. She also suggested that plaintiff check with Dr. Sudholt to see if her CPAP machine was working properly. (Tr. 239-240).

In June, 2010, Dr. Sudholt found nothing amiss with the CPAP machine setting.  (Tr. 249-250).

The earliest record from primary care physician Dr. Elvira Salarda is dated July 23, 2010. Plaintiff complained of intermittent left hip pain for the past 2 months. Dr. Salarda noted she had "filed for disability for heart." Plaintiff also said she had headaches, occasional shortness of breath, palpitations and fatigue. Dr. Salarda found tenderness over the left hip on exam. She prescribed medication and an x-ray. (Tr. 267-268).

In August, 2010, the cardiologist recorded no specific findings except for the previously-diagnosed palpitations secondary to premature ventricular contractions, and increased her Beta-blocker. (Tr. 261-264).

Plaintiff saw Dr. Salarda for her annual check-up on September 15, 2010. She complained of headaches, irregular heartbeat and pain in her left hip. She walked for exercise. Range of motion of the back was normal, and range of motion and strength in the legs was normal. (Tr. 265-266).

On the same day, September 15, 2010, Ms. Kohlhaas reported to Dr. Sawar

9

that the frequency of her headaches was "dramatically improved" by Indocin. The doctor noted a diagnosis of chronic hemicranias continua, clinically improving. (Tr. 357).

Dr. Vittal Chapa performed a consultative physical examination on September 30, 2010. Plaintiff told him she had daily headaches which lasted all day. She said she could not sit for a long time or walk very far. The physical examination was essentially unremarkable. Lumbosacral spine flexion was full and she had no muscle spasms. The range of motion of the joints was full. Straight leg raising was negative bilaterally. Neurological examination was normal. (Tr. 277-280).

Ms. Kohlhaas saw her sleep specialist, Dr. Sudholt, in December, 2010. She admitted that she had not been using her CPAP machine regularly. Dr. Sudholt discussed sleep hygiene measures to improve her compliance with CPAP. There were no structural or physical issues with the equipment.  (Tr. 305).

In December, 2010, she reported to Dr. Sawar that her headache had "subsided" and Dr. Sawar wrote that her headache was "clinically in remission." (Tr. 356).

Plaintiff was evaluated by Dr. Tony Chien, a pain management specialist, for left hip pain on December 10, 2010. She denied headaches, chest pain and heat/cold intolerance. She had pain to palpation in the lumbar spine, and paraspinal muscle spasms. She had pain with flexion and extension of the lumbar spine. X-rays showed disc space narrowing at L4-5 and L5-S1. The assessment was degenerative joint disease and degenerative disc disease of the lumbar spine

10

with left lower extremity radiculopathy.  (Tr. 315-317).   Dr. Salarda saw plaintiff on December 15, 2010.  She was still having back pain and was to have an injection in a few days.  (Tr. 327-328). Dr. Chien administered epidural steroid injections in December, 2010, and January, 2011.  (Tr. 320, 309).

The last visit with Dr. Salarda was in January, 2011.  Ms. Kohlhaas had pain in her finger which occurred while she was doing dishes.  (Tr. 323-324).  A Doppler ultrasound showed no arterial occlusion of the right upper extremity.  (Tr. 325).

Dr. Chien examined her again in February, 2011.  She reported that she had gotten little relief from the injections.  He noted that she had severe headaches in August, 2010, but she denied current headaches.  She complained of low back pain radiating to both buttocks and the left leg, worse with activity.  She again had pain in the lumbar spinal region on palpation and muscle spasms.  (Tr. 340-341).  Dr. Chien administered another epidural steroid injection.  (Tr. 344-345).

The last visit with Dr. Chien was on March 11, 2011.  Ms. Kohlhaas said she continued to have constant dull aching pain in her back with intermittent sharp pain.  Her symptoms were worsening and she had no relief from injections.  On exam, she again had pain in the lumbar spinal region on palpation and muscle spasms.  She had pain with flexion and extension of the lumbar spine.  There was positive straight leg raising on the left.  Muscle strength was full.  She had no sensory deficit.  Dr. Chien noted that a recent MRI showed multi-level spondylosis dominating disease at the L4-5 interval which created low grade impingement on the left L5 nerve root.  She was started on Neurontin and told not to do any heavy

lifting, pushing or pulling. (Tr. 336-337).

On March 16, 2011, she again reported to Dr. Sawar that her headache had improved with Indocin. However, she now complained of low back pain radiating into the left leg. (Tr. 355).

### 4. Dr. Salarda's Opinions

The last documented office visit with Dr. Salarda was on January 27, 2011. (Tr. 323). In June, 2011, Dr. Salarda completed a form in which she assessed plaintiff's physical capacities. Dr. Salarda opined that Ms. Kohlhaas was able to frequently lift up to 20 pounds, occasionally climb and kneel, and frequently reach above shoulder level. She felt that plaintiff could never stoop, crouch or crawl. Plaintiff should avoid "severe" exposure to unprotected heights, moving machinery and driving because she fell asleep easily. She could not use her left foot to operate foot controls. She was able to sit for 6 or more hours a day, but was able to stand/walk for less than 1 hour a day, and she required a sit/stand option. (Tr. 363-365).

In October, 2011, Dr. Salarda wrote a letter addressed "To Whom It May Concern," in which she stated that plaintiff had been unable to work for the past year because of medical problems. The doctor stated that plaintiff had persistent, worsening low back pain radiating to her left leg that was aggravated by prolonged walking, standing and sitting. In addition, sleep apnea caused excessive daytime sleepiness, and she was sometimes unable to use her CPAP machine because it was uncomfortable. She also had COPD which was aggravated by irritants and allergens in the environment. The doctor stated that the combination of these

problems caused her to be unable to work. (Tr. 366).

     **5.  RFC Assessment**

In June, 2010, a state agency consultant evaluated plaintiff's physical RFC based upon a review of the records. Dr. B. Rock Oh concluded that plaintiff could do work at the light exertional level, i.e., frequently lift 10 pounds, occasionally lift 20 pounds, sit for a total of 6 hours a day, and stand/walk for a total of 6 hours a day. She had no other limitations except that she should avoid exposure to unprotected heights and dangerous machinery. (Tr. 253-260).

## Analysis

Ms. Kohlhaas first argues that the ALJ erred in not giving greater weight to Dr. Salarda's opinions. With respect to the first report, ALJ LaRiccia said that she considered Dr. Salarda's treatment notes, and she accepted the doctor's opinion "except to the extent it is internally inconsistent with the doctor's own treatment notes and with other medical evidence in the record." She rejected Dr. Salarda's second report because it advocated more severe limitations without any new evidence to support them. (Tr. 30-31).

The opinions of treating doctors are not necessarily entitled to controlling weight. Rather, a treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

The version of 20 C.F.R. §404.1527(d)(2) in effect at the time of the ALJ's decision states:

13

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added][3]

Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." **Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted).** If is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." **Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527(d).**

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, she may "bend over backwards" to help a patient obtain benefits. **Hofslien v. Barnhart, 439 F.3d**

---

[3] The Court cites to the version of 20 C.F.R. §§ 404.1527 that was in effect at the time of the ALJ's decision. The agency subsequently amended the regulation by removing paragraph (c) and redesignating paragraphs (d) through (f) as paragraphs (c) through (e). 77 Fed. Reg. at 10656–57 (2012).

**375, 377 (7th Cir. 2006).** See also, ***Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").**

When considered against this backdrop, the Court finds no error in the ALJ's weighing of Dr. Salarda's opinions. With regard to the second report, written in October, 2011, the ALJ correctly observed that nothing had occurred since her first report to support the imposition of more restrictive limitations. As far as the record reflects, Dr. Salarda did not see plaintiff after she wrote her first report. In fact, the record reflects no treatment at all after the March 16, 2011, visit with Dr. Sawar. Thus, the ALJ did not err in rejecting those opinions on the basis that they were not supported by Dr. Salarda's treatment notes or by the medical evidence in general. Plaintiff does not seriously argue otherwise.

Plaintiff implicitly recognizes that the ALJ accepted the limitations suggested by Dr. Salarda in her first report except for her opinions that plaintiff could stand/walk for less than 1 hour a day and that she needed to alternate between standing and sitting. See, Doc. 19, pp. 18-19. Plaintiff suggests that the ALJ rejected the doctor's limitation of never carrying more than 20 pounds, but this is incorrect. The ALJ limited her to light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §404.1567(b)

Plaintiff argues that the ALJ was required to accept all of Dr. Salarda's limitations because no other doctor offered an opinion. Plaintiff cites ***Smith v.***

15

*Massanari*, 2002 WL 480955 (N.D.Ill., 2002), in support of her argument. That argument is simply incorrect. In the first place, *Smith* is a district court case and is therefore not precedential. *Harzewski v. Guidant Corporation*, 489 F.3d 799, 806 (7th Cir. 2007). The fact that plaintiff had to resort to a district court case illustrates the weakness of her argument. Secondly, plaintiff's reliance on *Smith* ignores the crucial fact that the doctor's opinion in that case was "consistent with other medical evidence." *Smith*, 2002 WL 480955 at *7. Further, *Smith* cites *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), wherein the Seventh Circuit observed, "Of course the administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—which need not itself be medical in nature—and of course our review is deferential . . . ."

ALJ LaRiccia undertook a detailed review of the medical evidence. The record documents only 4 visits with Dr. Salarda. As the ALJ noted, the last visit was for a finger injury, which is unrelated to her disability claim. Her first visit was 3 months after the alleged onset of disability. On that visit, although she was tender over her left hip, Dr. Salarda documented a full range of motion and an x-ray was negative. While she complained of headaches, she later reported to Dr. Sawar that her headaches were dramatically improved on Indocin. In December, 2010, she told Dr. Salarda that medication was helping her back pain. Further, the ALJ noted that Dr. Chien, the pain management specialist, found that Ms. Kohlhaas walked with a normal gait and had full strength throughout. Dr. Chien observed that a lumbar MRI showed only mild spondylosis and low-grade impingement of the

16

left L5 nerve root.  Despite these MRI results, Dr. Chien documented normal findings on sensory exam on his last visit.  And, the ALJ noted that Dr. Vittal Chapa examined plaintiff and reported essentially unremarkable findings.  (Tr. 27-29).

An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record.  **Henke v. Astrue, 498 Fed.Appx. 636, 639 (7th Cir. 2012); Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007).**  Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax."  **Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008); Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008).**  The Court finds that ALJ LaRiccia more than met the minimal articulation standard here.   Plaintiff has not demonstrated that she erred in not accepting all of the limitations proposed by Dr. Salarda.

Plaintiff also suggests that remand is required because the ALJ did not specifically discuss the factors set out in §404.1527 after deciding not to give controlling weight to Dr. Salarda's opinion.  However, the ALJ is not required to set forth a formal analysis of the factors where is it clear from her decision that she has considered the relevant factors and has explained why she rejected the doctor's opinion. See, **Sawyer v. Colvin, 512 Fed. Appx. 603, 609 (7th Cir. 2013); Henke v. Astrue, 498 Fed. Appx. 636, 640 (7th Cir. 2012).**  It is manifestly clear that ALJ LaRiccia considered supportability and consistency.   She was also

17

obviously aware of the nature and extent of the treatment relationship. The only other factor specified in the regulation, specialization, undermines plaintiff's position, as she does not contend that Dr. Salarda was a specialist.

Plaintiff's only other point is that the ALJ erred in not including additional limitations based on headaches and sleep apnea, and in not considering the collective effects of all of plaintiff's impairments.

RFC is "the most you can still do despite your limitations." 20 C.F.R. §1545(a). In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record." *Ibid.* Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not supported by the record.

Plaintiff's argument on this point relies heavily on the believability of her subjective complaints, and is therefore doomed from the outset. The ALJ found that plaintiff's allegations were not credible, and plaintiff has not challenged that finding. For the reasons set forth above, the ALJ's analysis of the medical evidence was not erroneous. Her RFC determination was substantially supported by the medical evidence.

In the final analysis, plaintiff's arguments are a plea to the Court to cast aside the ALJ's weighing of the evidence and to substitute its own analysis for that of the ALJ. This is, however, far beyond this Court's proper role. The most that can be said is that reasonable minds might differ as to whether Ms. Kohlhaas was disabled during the relevant time period. In that event, the ALJ's decision must be affirmed if it is supported by substantial evidence. The Court cannot make its own

credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. ***Shideler v. Astrue***, 688 F.3d 306, 310 (7th Cir. 2012); ***Elder v. Astrue***, 529 F.3d 408, 413 (7th Cir. 2008).

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ LaRiccia committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Sarah L. Kohlhaas' application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** June 5, 2014.

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**